No. 859          November 27, 2024          479

*This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).*

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BRYAN JEFFREY ROBERTSON,
*Defendant-Appellant.*

Yamhill County Circuit Court
21CR24618; A178231

Ladd J. Wiles, Judge.

Argued and submitted October 30, 2024.

Anne Fujita Munsey, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Rolf C. Moan, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, Kamins, Judge, and DeVore, Senior Judge.

TOOKEY, P. J.

Conviction on Count 1 reversed; remanded for resentencing; otherwise affirmed.

**TOOKEY, P. J.**

Defendant appeals a judgment convicting him of Count 1, delivery of methamphetamine, ORS 475.890,[1] and Count 3, possession of methamphetamine, ORS 475.894,[2] raising two assignments of error. In his first assignment of error, defendant argues that the trial court erred in denying his motion for judgment of acquittal on Count 1, arguing that "delivery requires proof of an unsuccessful transfer, not merely a substantial step with the intent to transfer." The state responds that defendant's conviction for delivery was proper because "defendant possessed controlled substances, intended to deliver them to another, and made an effort to engage in the act of transferring them." (Internal quotation marks omitted.) In his second assignment of error, defendant argues that "[t]he trial court erred when it refused to merge Count 3 with Count 1 for a single conviction for delivery of methamphetamine." The state concedes that error.

For the reasons articulated below, we conclude that the evidence against defendant is insufficient to support a conviction for delivery of methamphetamine. In light of that conclusion, we do not reach the question of merger. We reverse defendant's conviction for delivery of methamphetamine, remand for resentencing, and otherwise affirm.

## I.  FACTS

We briefly summarize the relevant facts, which are not in dispute. Defendant was arrested just after 1:15 pm while in possession of approximately 10 grams of methamphetamine. The methamphetamine was divided between four small plastic baggies: two individually packaged "eight

---

[1]  ORS 474.890(1) provides:

"Except as authorized by ORS 475.005 ***, it is unlawful for any person to deliver methamphetamine."

ORS 475.005(8) provides:

"'Deliver' or 'delivery' means the actual, constructive or attempted transfer, other than by administering or dispensing, from one person to another of a controlled substance, whether or not there is an agency relationship."

[2]  ORS 475.894(1) provides:

"It is unlawful for any person knowingly or intentionally to possess methamphetamine unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of professional practice, or except as otherwise authorized by ORS 475.005 ***."

balls" (about an eighth of an ounce or 3 grams) and two individually packaged "teeners" (about a sixteenth of an ounce or 1.5 grams). Defendant also had three empty small plastic baggies. Officers confiscated and searched defendant's cell phone, on which they found a text message conversation between defendant and "Bill." That conversation started the previous afternoon:

Bill:   "Hey u busy?"

Defendant:   "No what are u needing"

Bill:   "It's late now txt u tomorrow a ball if u can .week days have to be at house by 900"

Defendant:   "I just got your text"

Bill:   "I can meet u tomorrow after work done by 330pm"

There is no reply message from defendant.

At defendant's jury trial, multiple officers involved in the case testified that the total amount of methamphetamine that defendant possessed, along with the manner in which it was packaged, was indicative of drug dealing. The officers also testified that a single "user amount" of methamphetamine is typically a "teener" or less.

## II.   DISCUSSION

A.   *Defendant's First Assignment of Error*

In his first assignment of error, defendant contends that "the trial court erred when it denied defendant's motion for judgment of acquittal on Count 1, delivery of methamphetamine." In reviewing a trial court's denial of a motion for judgment of acquittal, we view "the evidence in the light most favorable to the state to determine whether a rational trier of fact, accepting reasonable inferences and reasonable credibility choices, could have found the essential element[s] of the crime beyond a reasonable doubt." *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995); *see also State v. O'Hare*, 309 Or App 357, 361, 481 P3d 953 (2021) (articulating the same standard in reviewing the denial of a defendant's motion for judgment of acquittal of a delivery charge).

Under ORS 475.890(1), "it is unlawful for any person to deliver methamphetamine." The definition of "deliver" encompasses "the actual, constructive or attempted transfer * * * from one person to another of a controlled substance[.]" ORS 475.005(8). In order to be liable for the crime of delivery of a controlled substance via an "attempted transfer," an individual's conduct must be "directly connected to the act or acts by which a controlled substance changes possession." *State v. Hubbell*, 371 Or 340, 359, 537 P3d 503 (2023).

This case was tried after the Court of Appeals decided *State v. Hubbell*, 314 Or App 844, 500 P3d 728 (2021), which was later affirmed by the Oregon Supreme Court, *Hubbell*, 371 Or at 343. *Hubbell* overturned a prior decision, *State v. Boyd*, 92 Or App 51, 756 P2d 1276, *rev den*, 307 Or 77, 763 P2d 731 (1988), under which a defendant could be convicted for the completed crime of delivery of a controlled substance using an interpretation of the phrase "attempted transfer" analogous to the definition of the lesser, inchoate crime of attempted delivery.[3] *Hubbell*, 371 Or at 342-343. *Hubbell* now makes clear "that a person has engaged in an 'attempted transfer' if the person has made some effort to undertake the *act or acts* of causing controlled substances to pass from one person to another[,]" but that "[s]teps preceding such an effort are insufficient to show an attempted transfer, even if they are consistent with a generalized intent to distribute the controlled substance in the future." *Id.* at 359 (emphasis in original). Specifically, "evidence that a person possessed a large quantity of a controlled substance and had a general intent to transfer it at an undetermined future time" is insufficient to prove an "attempted transfer." *Id.* at 360. "Some additional evidence that the person made an effort to engage in the act of transferring is required." *Id.*

In this case, defendant contended at trial, and now renews his argument, that the evidence is insufficient to support a conviction for delivery of methamphetamine via an "attempted transfer," under the Court of Appeals decision in *Hubbell*. According to defendant, "possession of

---

[3] ORS 161.405(1) provides that:

"A person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward commission of the crime."

drugs and evidence of the intent to deliver does not constitute the completed crime of delivery of controlled substance. *** [An attempted transfer] does not occur unless the person actually tries and fails to transfer the drugs to another person." In response, the state contends that that evidence is consistent with an "attempted transfer" under the holding in *Hubbell* because, in the state's view, defendant "made an effort to engage in the act of transferring" the methamphetamine to "Bill."

There is no dispute that defendant "possessed a large quantity of" methamphetamine, or that the packaging of that methamphetamine indicates that defendant "had a general intent to transfer it at an undetermined future time." *Hubbell*, 371 Or at 360. The state focuses its argument on what is, in the state's view, "additional evidence that [defendant] made an effort to engage in the act of transferring," *id.*, including the following facts: that at least one of the baggies of methamphetamine found on defendant's person is consistent with the quantity requested by "Bill," and that text messages support an inference that defendant intended to transfer methamphetamine to "Bill" on the same day that defendant was arrested.

At most, those facts show that defendant engaged in steps preceding or intended to facilitate an effort to transfer controlled substances to another person. But the evidence falls short of supporting a finding that defendant engaged in an "effort to undertake the act or acts of causing" methamphetamine to be transferred to another person. That is, even though defendant possessed enough methamphetamine to indicate a generalized intent to sell; that methamphetamine was packaged in multiple individual quantities consistent with "user amounts;" and defendant had engaged in some conversation about an "eight ball," defendant had not yet "made an effort to engage in the act of transferring" an "eight ball" to "Bill," because he had not yet made an effort to relinquish control of the methamphetamine in his possession.

We decline to comment on any facts necessary to constitute an "attempted transfer." *See Hubbell*, 371 Or at 360 ("Transfers of controlled substances take varying forms,

\* \* \* and what is necessary for an 'attempted transfer' will depend on the circumstances."). But we note that the following facts are dispositive in our determination that, in this case, there is insufficient evidence of an "attempted transfer." The text messages between defendant and "Bill" show that defendant never confirmed any part of "Bill's" requested order and had yet to take any physical act constituting an effort to transfer the methamphetamine. Defendant was arrested just after 1:15 pm, and the evidence does not support an inference about what defendant would have otherwise done with the methamphetamine after 3:30 pm beyond mere speculation. Finally, there is no evidence that defendant was at or close to any delivery location at the time of his arrest. In sum, there is insufficient evidence connecting the "eight balls" in defendant's pocket to the act of defendant delivering "Bill's" order.[4] Accordingly, we conclude that, even when viewed in the light most favorable to the state, the evidence is insufficient to support a conviction for delivery of methamphetamine via an "attempted transfer."

B.  *Defendant's Second Assignment of Error*

In his second assignment of error, defendant contends that the trial court erred when it refused to merge Count 3, possession of methamphetamine, with Count 1, delivery of methamphetamine, for a single conviction for delivery of methamphetamine. As noted, the state concedes that that is error under *State v. Serbin*, 324 Or App 792, 801, 527 P3d 794 (2023) (concluding that "[d]elivery, as defined

---

[4] The instant case is similar to *State v. Carr*, in which the evidence—showing that the defendant was in possession of drugs, packaging materials, and other drug paraphernalia; was known to sell drugs from time to time; and was planning to sell drugs to someone on the same day that he was arrested—was insufficient to support a conviction for delivery via an "attempted transfer." 319 Or App 684, 692-93, 511 P3d 432 (2022), *rev den*, 371 Or 771 (2023); *see also State v. Buell*, 317 Or App 667, 670-71, 506 P3d 505 (2022), *rev den*, 371 Or 771 (2023) (in which the defendant possessed 17,000 user amounts of methamphetamine, possessed packaging materials, and had traded text messages with potential buyers; we concluded the same); *State v. Fischer*, 315 Or App 267, 269, 500 P3d 29 (2021), *rev den*, 371 Or 771 (2023) (in which the defendant possessed 42 user amounts of heroin and 89 user amounts of methamphetamine, but had not taken any additional steps toward selling those substances; we concluded the same); *State v. Tacia*, 330 Or App 425, 436-37, 543 P3d 713 (2024) (in which we determined that, although the defendant "had a dealer quantity of methamphetamine, baggies, and a scale" and had been "transporting the drugs by car," "there was no evidence of any effort \* \* \* to actually transfer the methamphetamine to another person").

by ORS 475.005(8), requires possession, as defined by ORS 161.015(9)"). However, in light of our resolution of defendant's first assignment of error, reversing his conviction on Count 1, that issue no longer bears on the resolution of this case. Thus, although, "[o]ur disposition is not intended to foreclose any merger issues that might arise on remand," *Hubbell*, 314 Or App at 873 n 11, we do not further address defendant's second assignment of error.

Conviction on Count 1 reversed; remanded for resentencing; otherwise affirmed.